UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD SHAYA,

    Plaintiff,

v.

Case No. 1:14-cv-1289

Hon. Ray Kent

LOWE'S HOME CENTERS, LLC, and
GENERAC POWER SYSTEMS, INC.,

    Defendants.

_____/

**OPINION**

This matter is now before the Court on a motion for summary judgment filed by defendants Lowe's Home Centers, LLC ("Lowe's") and Generac Power Systems, Inc. ("Generac") (docket no. 25).

**I.**    **Background**

Plaintiff Todd Shaya filed this action in the Emmet County Circuit Court alleging the following facts. On or about October 19, 2013, plaintiff purchased a model no. 6251 generator manufactured by Generac ("the generator") from a Lowe's Home Improvement store located in Petoskey, Michigan. PageID.9. Plaintiff purchased the generator to protect a second home located at 539 Linden, Harbor Springs, Michigan ("the property") from power outages. *Id.*  He contracted with Chosen Electric, whom he identified as an "agent of [d]efendants" to install the generator on the property. PageID.9-10. Plaintiff also purchased a transfer switch from Lowe's as directed by "[a]gents of Lowes [sic] and/or Generac." PageID.10. Lowe's sold plaintiff the generator, transfer

switch and all related components, "along with installation by the installer of their choice," to plaintiff "as a package deal." *Id.* Plaintiff stated that he never had possession of the generator or transfer switch, which Lowe's provided directly to Chosen Electric for installation. *Id.*

On November 11, 2013, Chosen Electric installed the generator and transfer switch at the property. *Id.* Approximately three weeks after the installation, Harbor Springs suffered a power outage which lasted approximately 40 minutes. *Id.* However, power was not restored to the property "due to a previously known defect with the Generac Generator and/or Transfer Switch" which blocked electricity from connecting to the main electric panel, leaving the property with no power. *Id.* If the generator and transfer switch had worked "as represented to [p]laintiff," the generator would have supplied power to the property during the outage and then reconnected when power was restored to the area. *Id.*

The property was uninhabited at the time of the power outage. PageID.11. During that time, the pipes froze and burst, with water "causing severe damage to the ceiling, floors, walls, showers, toilets, cabinetry, appliances, windows and doors." *Id.* In addition to the water damage, mold began to grow within the property which required remediation and removal. *Id.* When plaintiff and his family entered the property, they discovered the damage and had to stay at a hotel because the property was uninhabitable. *Id.*

Plaintiff contacted personnel at Lowe's, who directed him to contact Chosen Electric and Generac. *Id.* Dan, an employee of Chosen Electric, determined that the generator "failed due to a defect which caused the [t]ransfer [s]witch not to operate properly." *Id.* According to Dan, Generac was aware of a defect with the generator "and/or" the transfer switches and advised installers in a memo that it would be sending out retrofitting kits to alleviate a potential problem.

2

*Id.* Because Dan received Generac's memo after the installation of the generator, Chosen Electric instructed plaintiff to contact Generac. *Id.*

A Generac customer service agent told plaintiff that it knew of "these very types of problems with the [g]enerator and [t]ransfer [s]witch and that they had been determined to be faulty." *Id.* About one month later, Generac inspected the generator and transfer switch and advised plaintiff that both were defective. PageID.12. Plaintiff was in contact with Generac personnel who told him not to file an insurance claim and its Vice President of Customer Service, Nancy Tonkin, represented to plaintiff "that she would personally ensure that the matter was taken care of." *Id.* Plaintiff made no further allegations with respect to his remediation efforts with Chosen Electric, Lowe's, Generac or Tonkin.

Plaintiff alleged that the defects in the generator "and/or" transfer switch render the generator unusable and prevent power from being restored to homes where the generator is installed. *Id.* Plaintiff alleged to have lost at least $60,000.00 in damages as a result of the defective generator and/or transfer switch. *Id.* Plaintiff set forth seven counts for relief. In Count I, plaintiff alleged that defendants breached various express and implied warranties under state law related to the generator and the transfer switch. In Count II, plaintiff alleged that defendants' breaches of express and implied warranties arising under state law also violated a federal statute, the Magnuson-Moss Warranty Act, 15 U.S.C. 2301 *et seq*. (sometimes referred to as the "MMWA"). In Count III, plaintiff alleged that defendants violated the Michigan Consumer Protection Act, M.C.L. § 445.901 *et seq*. by engaging in unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce. In Count IV, plaintiff alleged that defendants committed silent fraud when they purposely omitted their knowledge and remained silent, regarding the defective generator and

transfer switch in an effort to induce plaintiff to purchase these items. In Count V, plaintiff alleged that defendants were negligent by performing a number of actions (i.e., failing to properly design the generator and/or transfer switch, failing to properly and adequately install components and component systems for the generator, failing to correct the defects with the generator and/or transfer switch, failing to adequately warn potential purchasers (including plaintiff) of the defects with the generator and/or transfer switch, and failing to rectify the defects with the generator and/or transfer switch prior to installation at plaintiff's property). In Count VI, plaintiff alleged that defendants are liable to him under the doctrine of promissory estoppel. Finally, in Count VII, plaintiff alleged that defendants have been unjustly enriched. PageID.13-21.

Defendants removed this action to the Western District, stating that is was a civil action which this Court had original jurisdiction under the Magnuson-Moss Warranty Act and 28 U.S.C. § 1331 ("[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"). *See* Notice of Removal (docket no. 1).

## II. Defendants' motion for summary judgment

### A. Legal standard

Defendants have moved for summary judgment on all of plaintiff's claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Discussion

As discussed, this Court assumed jurisdiction of this state court action based upon the federal question raised in Count II, which alleged a violation of the MMWA. Upon reviewing the record, the Court concludes that plaintiff failed to meet the amount in controversy required to pursue a claim under the MMWA. For this reason, the Court lacks subject matter jurisdiction of the federal claim which served as the basis for removal. "Subject matter jurisdiction may be raised at any stage in the proceedings, including on appeal. When a statute conditions federal court jurisdiction on the satisfaction of an amount in controversy requirement, the failure to meet that specified amount divests the federal courts of subject matter jurisdiction." *Schultz v. General R.V.*

*Center*, 512 F.3d 754, 756 (6th Cir. 2008) (internal citation omitted).  For the reasons discussed below, this action will be remanded to the state court for failing to meet the amount in controversy requirement.

The "unusual jurisdictional clause" in the MMWA, 15 U.S.C. § 2310(d)(1), allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action. *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 956 (7th Cir.1998). "In other words, an aggrieved customer may sue on state-law claims in federal court, whether or not the parties are of diverse citizenship." *Id.*

> The purpose of the MMWA is to "improve the adequacy of information available to consumers, prevent deception, and improve competition in the marketing of consumer products . . ." 15 U.S.C. § 2302(a). In order to advance these goals, § 2310(d) provides a statutory private right of action to consumers "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter or under a written warranty, implied warranty, or service contract. . . ." § 2310(d)(1).

*Rickard v. Teynor's Homes, Inc.*, 279 F. Supp. 2d 910, 919 (N.D. Ohio 2003).

"The MMWA is a somewhat unique federal statute in that merely alleging a violation of the act is insufficient to confer federal question jurisdiction; a separate $50,000 amount in controversy requirement must also be satisfied." *Schultz*, 512 F.3d at 757.  *See* 15 U.S.C. § 2310(d)(3)(B) ("No claim shall be cognizable [in federal court] . . . if the amount in controversy is less than the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.").  Courts apply the legal certainty test to MMWA claims, finding that "federal subject matter jurisdiction exists if there is a probability that the value of the matter in controversy exceeds the jurisdictional amount." *Schultz*, 512 F.3d at 756 (internal quotation marks omitted).

Plaintiff's action involves a MMWA claim arising from the purchase of the generator and transfer switch. For purposes of determining the amount in controversy under the MMWA, the court begins the calculation with the value of the goods involved. *See, e.g., Schultz*, 512 F.3d at 759 (where the alleged MMWA violation involved the revocation of acceptance of a vehicle "the amount in controversy is to be determined by the price of a replacement vehicle, minus both the present value of the allegedly defective car and the value that the plaintiff received from the use of the allegedly defective car") (internal quotation marks and emphasis omitted).

Here, the total cost of the goods involved, including installation, was $4,269.00. *See* Exterior Solutions Installed Sales Contract (the "Sales Contract") (entered into by plaintiff and Lowe's) (docket no. 34-1, PageID.319). The sales contract reflects a sales price of $2,249.00 for the generator and an installation cost of $2,220.00. *Id.* at PageID.322. Based on these figures, the amount in controversy for the goods purchased is far below the amount required to bring a claim under the MMWA. Even if the Court considered the entire sales contract amount of $4,269.00 as the total price of the goods with installation, the amount in controversy still falls far short of the amount required to seek relief under the MMWA.

The Court's analysis would end here, but for plaintiff's contention that his losses exceeded the cost of the goods. He seeks consequential damages of "over $59,000.00" based on cost estimates to repair the water damage caused by the alleged malfunction of the generator and/or switch. *See* Plaintiff's Response (docket no. 35, PageID.299). Specifically, plaintiff stated that according to "Exhibit E" of his affidavit, the "repair estimates total $56,265.30." Plaintiff's Response at PageID.300; Repair estimates, PageID.338-338. For purposes of this opinion, the Court will view the repair estimates of $56,265.30 as the amount of plaintiff's alleged damages. While this

7

figure exceeds the $50,000.00 jurisdictional amount in controversy under the MMWA, plaintiff's claim still fails.

Under the facts of this case, these consequential damages are not included in calculating the MMWA's requisite amount in controversy. The MMWA allows manufacturers to expressly exclude consequential damages in their warranties. *See* 15 U.S.C. § 2304(a)(3) (stating that a "warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, *unless such exclusion or limitation conspicuously appears on the face of the warranty*[.]") (emphasis added). Under Michigan's version of the Uniform Commercial Code, consequential damages are defined as "injury to person or property proximately resulting from any breach of warranty." M.C.L. § 440.2715(2)(b). A seller of goods may limit a buyer's remedies with respect to consequential damages. *See* M.C.L. § 440.2719(3) ("Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.").

Here, defendants have produced copies of the Generac warranty and the sales contract containing the Lowe's warranty. Plaintiff had access to both warranties, which expressly exclude consequential and incidental damages. The sales contract included the following terms with respect to the warranties:

> **11.     MANUFACTURER WARRANTY FOR GOODS.** Customer is entitled to any warrant provided by the manufacturer of the Goods sold under this Contract. The Installer will provide Customer with any manufacturer consumer warranty accompanying the Goods, and Customer may also obtain such information by contacting Lowe's. Lowes does not warrant the Goods **AND EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING**

**WITHOUT LIMITATION THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.**

**12. LOWE'S WARRANTY FOR INSTALLATION SERVICES / LIMITATIONS OF LIABILITY** . . . Customer agrees that its sole and exclusive remedy against Lowe's for a warranty claim is reinstallation in a good and workmanlike manner, including the repair or replacement of any Goods if and to the extent reasonably necessary to correct the defective Installation Services. **CUSTOMER SHALL HAVE NO OTHER REMEDY FOR A WARRANTY CLAIM** . . . **IN NO EVENT SHALL LOWE'S BE LIABLE FOR INDIRECT, PUNITIVE, CONSEQUENTIAL OR INCIDENTAL DAMAGES (SUCH AS, WITHOUT LIMITATION, LOST PROFITS, LOST SALES, AND INJURIES TO PERSONS OR PROPERTY)**[.]

Lowe's Sales Contract, PageID.320-321.

The Generac warranty provided in pertinent part that:

**THIS WARRANTY SHALL NOT APPLY TO THE FOLLOWING:** . . .
15. Any incidental, consequential or indirect damages caused by defects in materials or workmanship, or any delay in repair or replacement of the defective parts."

Generac Warranty, PageID.138. These warranties excluding consequential damages are consistent with M.C.L. § 440.2719(3). Plaintiff provides no basis for the Court to conclude that the warranty exclusions (which in this case apply to property damage) are unconscionable.[1]

A plaintiff bringing a claim under the MMWA is subject to a warranty provision which excludes consequential damages. When such damages are excluded, they are not considered in calculating the $50,000.00 required amount in controversy. *See Ferrer Santiago v. Daimler*

---

[1] *See Liparoto Construction, Inc. v. General Shale Brick, Inc.*, 284 Mich. App. 25, 30-31, 772 N.W.2d 801 (2009) ("For a contract or a contract provision to be considered unconscionable, both procedural and substantive unconscionability must be present. Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term. Substantive unconscionability exists where the challenged term is not substantively reasonable. However, a contract or contract provision is not substantively unconscionable simply because it is foolish for one party or very advantageous to the other. Instead, a term is substantively unreasonable where the inequity of the term is so extreme as to shock the conscience.") (internal citations and quotation marks omitted).

*Chrysler Corp.*, 265 F. Supp. 2d 171, 172-73 (D.P.R. 2003) (where consequential damages are excluded from a warranty as allowed under 15 U.SC. § 2304(a), plaintiffs in an MMWA action are subject to that provision in calculating the jurisdictional amount in controversy). Accordingly, any consequential damages caused by the alleged malfunction of the generator and/or transfer switch are not included in determining whether plaintiff has met the $50,000.00 jurisdictional requirement under the MMWA.

Finally, even if the consequential damages were not expressly excluded by the warranties, plaintiff would still not reach the requisite amount in controversy. It is undisputed that plaintiff agreed to accept an insurance settlement of $29,000.00 to repair the damage to the property. In a letter dated June 16, 2014, Jeffrey Kempfer, a Special Field Claims Representative for Farmers Insurance Exchange ("Farmers"), memorialized the agreement between plaintiff and Farmers for repairing the property, stating in pertinent part:

> This letter is in follow-up to your letter dated June 9th, 2014. To date, we have paid out a total of $27,500 for repairs, including replacement cost payments, less your $1,500.00 deductible. This totals the agreed upon amount of repairs, $29,000, between our appraiser and your representative. Therefore, no additional payments will be made at this time.

Letter (June 16, 2014) (docket no. 25-4, PageID.140).

Under the subrogation clause of plaintiff's insurance policy, Farmers, which is not a party to this litigation, owns the right to recover the $27,500.00 it paid for repairs. *See Farmers Next Generation Homeowners Policy for 539 Linden Dr., Harbor Springs, MI 49740* (docket no. 25-5, PageID.143, 201) ("When we pay for any loss or damage, an **insured's** right to recover from anyone else for that loss or damage becomes our right up to the amount we have paid") (emphasis in original). Given these facts, plaintiff asserts that he retained the right to seek damages in excess

of the amount paid by Farmers. *See, generally, Milbrand Co. v. Lumbermans Mutual Insurance Co.*, 175 Mich. App. 392, 396; 438 N.W.2d 285 (1989) (where the insurance company owned the subrogation right to the amount paid on a policy, and the insured claimed that its total loss was not covered by that amount, the insured retained an interest in seeking reimbursement for the uncovered losses).

Assuming, for purposes of this motion, that plaintiff could demonstrate that his actual losses are reflected in the $56,265.30 cost estimate, and that he retains the right to seek damages in excess of those paid by Farmers, the most that plaintiff could recover from defendants would be $29,065.30 (i.e., the $56,365.30 estimated costs minus the $27,500.00 paid by Farmers). This amount is still far below the $50,000.00 amount in controversy required under the MMWA. For all of these reasons, the Court will grant defendants' motion for summary judgment as to the MMWA claim alleged in Count II.

### IV. Remand

Defendants removed this action from state court based upon the federal question raised in plaintiff's Magnuson-Moss Warranty Act claim. *See* Notice of Removal at PageID.2; 28 U.S.C. § 1331. Because plaintiff failed to meet the $50,000.00 amount in controversy, the Court finds that plaintiff has not stated a cognizable claim under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(3)(B). The Court lacks subject matter jurisdiction over plaintiff's remaining state law claims, which will be remanded to the state court. *See* 28 U.S.C. § 1447(c) ("[i]f at any time

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded").[2]

Accordingly, defendants' motion for summary judgment (docket no. 25) is **GRANTED** as to the Magnuson-Moss Warranty Act claim alleged in Count II, and this matter shall be remanded to the Emmet County Circuit Court. An order consistent with this opinion will be issued forthwith.

Dated:  March 29, 2016                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge

---

[2] In reaching this determination, the Court notes that while plaintiff's complaint identified Lowe's as "a foreign limited liability company with its principal place of business located in North Carolina" and Generac as "a foreign Corporation with its principal place of business located in Wisconsin," defendants did not seek removal from the Emmet County Circuit Court on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332. *See* Notice of Removal at PageID.2, 9. For the reasons discussed in this opinion, even if defendants had sought removal under diversity jurisdiction, plaintiff's claim does not meet the amount in controversy under 28 U.S.C. § 1332(a) ("[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs").